IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| KEINALD V. PARNELL, | ) | |
| | ) | |
| Petitioner, | ) | 8:07CV220 |
| | ) | |
| v. | ) | |
| | ) | |
| ROBERT P. HOUSTON, Director, | ) | **MEMORANDUM** |
| and FRED BRITTEN, Warden, TSCI, | ) | **AND ORDER** |
| | ) | |
| Respondents. | ) | |

Keinald V. Parnell (Parnell) challenges the Nebraska conviction that keeps him behind bars.  The respondents have answered, and they have submitted the state court records.  Briefs have been filed.  Framed in a variety of ways, Parnell's primary claim is that the evidence was not sufficient to convict him.  After careful review, I now dismiss, with prejudice, the petition for a writ of habeas corpus.

## I.  BACKGROUND

To set the stage, I describe the facts relevant to the crime.  After that, I detail Parnell's federal claims and the procedural history relevant to them.

### Crime Facts

The petitioner was convicted by a jury of being a felon in possession of a firearm.[1]  Following the jury's determination of guilt, a hearing was held before the

---

[1]*See* Neb. Rev. Stat. § 28-1206(1) (1995) ("Any person who possesses any firearm . . . and who has previously been convicted of a felony . . . commits the offense of possession of a deadly weapon by a felon . . . .").

trial judge to determine if Parnell should be treated as a habitual offender[2] for sentencing purposes.  The judge found Parnell was such an offender.  Accordingly, it is helpful to separate the factual discussion into two parts.

*Possession of a Firearm by a Felon*

The parties stipulated that Parnell was a convicted felon and that it was unnecessary for the State to prove that fact regarding the possession charge.  (Filing 11-2, at CM/ECF p. 3.)  The dispute was whether Parnell possessed a weapon.

The Nebraska Court of Appeals fairly described the facts that the jury heard. *See State v. Parnell*, No. A-05-224 (Neb. App. November 22, 2005) (unpublished) (copy at filing 11-12, at CM/ECF pp. 35-36 & filing 11-13, at CM/ECF pp. 1-29). In particular, the Court of Appeals provided the following description of that evidence:

> Omaha Police Sergeant John Sokolik was the first witness to testify for the State.  Sokolik testified that on the evening of April 19, 2004, he received a call from three police officers who had responded to a call near 4216 North 93 Street, Omaha, Nebraska.  Sokolik testified that the officers believed there was a wanted party inside the residence at 4216 North 93 Street and that the party was armed and had made threats.  Sokolik went to the location where the three officers were located.  The officers were with Tammy Scales, who is Parnell's girlfriend and owner of the residence at 4216 North 93 Street, and Kelly

---

[2]*See* Neb. Rev. Stat. § 29-2221(1) (1995) ("Whoever has been twice convicted of a crime, sentenced, and committed to prison, in this or any other state . . . , for terms of not less than one year each shall, upon conviction of a felony committed in this state, be deemed to be an habitual criminal and shall be punished by imprisonment . . . for a mandatory minimum term of ten years and a maximum term of not more than sixty years . . . ."). Parenthetically, I cite the 1995 version of the statutes because it was that version that was applied to Parnell.

Boston, a friend of Scales. Sokolik testified that based on information he received from Scales, Boston, and the officers, he learned that the individual in the residence was Parnell and he also determined that a "barricaded situation" existed. Sokolik testified that he called in other officers to assist in setting up a perimeter around Scales' residence.

Sokolik testified that he eventually spoke with Parnell by telephone. He testified that during his telephone conversation with Parnell, he told Parnell that if he had a weapon to not bring it with him when he exited the house. Sokolik testified that Parnell told him that he did not have a weapon. Parnell subsequently came out of the residence and surrendered peacefully. Parnell was then taken into custody. Sokolik testified that after Parnell was taken into custody, Scales gave permission to search her residence and officers located a weapon inside the house.

Omaha Police Officer Thomas Loftus testified that on April 19, 2004, he and Officer Daryl Krause initially went to 4216 North 93 Street on a wanted party call. Loftus testified that there was a car in the driveway that was registered to Parnell. Loftus testified that he and Krause knocked on the door and no one answered so they left. Loftus testified that later in the day, he and another officer got called to a location a few blocks from 4216 North 93 Street, where they spoke with Scales and Boston. Loftus testified that Scales said Parnell told her over the telephone to "go ahead and call the police because he's not afraid to die." She also stated there was a gun in her house. Loftus testified that following his conversation with Scales and Boston, he advised Sokolik that there was a possible armed party in the house at 4216 North 93 Street, and Sokolik subsequently arrived at their location.

Following Loftus' testimony, Parnell's counsel discovered that the State had failed to disclose a report prepared by Loftus prior to Loftus testifying. Parnell's counsel brought his discovery to the court's attention outside the presence of the jury. The trial court noted that the report seemed to contain "inculpatory type statements and inculpatory type information," rather than exculpatory material. However, the court made the police report part of the record, but stated that it would not go

-3-

to the jury, and ordered the State to make Loftus available over the lunch break in the event that Parnell's counsel "wants to take a deposition or any other type of discovery that he feels is necessary before determining whether or not to call Officer Loftus back."

Boston was the next witness to testify for the State. Boston testified that she is married to Scales' brother. She testified that she met Parnell through Scales and that she has known him for four years. She testified that Parnell has lived with Scales at 4216 South 93 Street for as long as she has known him, including April 2004. She also testified that he has personal items at Scales' house, such as clothing, tools and a weight bench.

Boston testified that on April 17, 2004, she received a telephone call from Scales, who was frantic. She testified that after speaking with Scales, she went to Scales' house and Scales threw some clothes in a bag and said she needed to get out of the house. Boston testified that she and Scales then left in Boston's car and went to Boston's house. Boston testified that in the evening on April 17 Scales called Parnell and told him that she needed her car back. Boston testified that the next day, April 18, Parnell left Scales a message telling her that her car broke down and she would never get it back. Boston testified that on April 19, she and Scales drove to Scales' house because Scales needed more clothes. When they got near the house, they saw Parnell's car in the driveway. Boston testified that they parked a couple blocks from Scales' house and Scales called Parnell and asked him to leave the house. She testified that Parnell refused to leave so they called the police. Boston testified that police officers arrived and Scales informed them about the situation. Boston testified that while she and Scales were sitting in the back of a female police officer's cruiser, she received a call from Parnell on her cellular telephone. Boston testified that Parnell said that he could see the police officers around the house and that he had a gun and would shoot whoever came through the door.

Boston testified that within a few days after the April 19 incident, she and Scales went to Glenwood, Iowa, to get Scales' car which was located on property owned by a friend of Parnell's. Boston also testified

-4-

that she has never seen a gun in Scales' house and that Scales had not told her until April 19 that there was a gun in the house.

Omaha Police Officer Angela Echtenkamp, the officer whose car Scales and Boston were sitting in, testified that she did not hear Boston receive a telephone call from Parnell and that Boston never told her that she had a conversation with Parnell. However, the female officer testified that during the time Scales and Boston were sitting in her cruiser there were times when she stood outside her car talking to other officers.

Scales testified that she and Parnell have been dating off and on for four years and that he has lived with her at 4216 North 93 Street, off and on during that time. She testified that in that month before the April 19 incident, Parnell stayed overnight at her house about four or five times. Scales agreed with Boston's testimony that Parnell had a few clothes at her house, as well as some tools and a weight bench.

Scales testified that on April 17, 2004, she and Parnell got into an argument and he threatened her. She testified that at the time of the argument Parnell was driving her car and he dropped her off at her house and left with her car. Scales testified that she then called Boston to come pick her up, which Boston did. Scales testified that on April 18, Parnell told her that her car broke down and that it was in Glenwood, Iowa. She testified that on April 19, she called Parnell and asked him to leave her house so she could go home without him being there. She testified that she and Boston drove to Scales' house and after seeing Parnell's car there, they drove away from the house and called the police. Scales said that after the officers arrived, they asked her if there was a gun in the house and she replied that there was.

Scales testified that the gun had been in her house for about a month before April 19. She testified that Parnell's brother brought the gun to her house in a case and the two of them put it in a "cubbyhole closet" located behind a removable piece of wall paneling under the stairs in the basement of her house. Scales testified that Parnell was not

-5-

at her house when his brother brought the gun there and that she never told him it was there.

Scales testified that the day after the April 19 incident, she went with Boston, her brother, and a friend of Parnell's to Glenwood, Iowa, to get her car which was located on property owned by the friend of Parnell's.

Sokolik was recalled as a witness by the State and testified that he recalled Boston receiving a telephone call from Parnell and that she relayed to him what Parnell had said. He testified that he also remembered Echtenkamp being nearby at the time, but could not remember specifically what she was doing because he had assigned her several tasks.

Officer Krause testified that on April 19, 2004, he and Officer Loftus went to 4216 North 93 Street on a wanted party call. He testified that he was also one of the officers that later responded to the call near 4216 North 93 Street and that upon arriving at the location, he and the other officers spoke with Scales and Boston. Krause testified that Scales informed him that she was the one that called in Parnell as a wanted party earlier that day and that he was her live-in boyfriend. Krause testified that Scales told him that Parnell had a gun in the house and that Parnell had told her that he knew the police were there and that "He wasn't afraid to die. Police would not take him alive." On cross-examination, Krause clarified after reviewing his report, that Scales told him Parnell owns a gun, and not that Parnell had a gun in the house.

Krause testified that after Parnell exited the house, the emergency response unit (ERU) went in the house to check for additional suspects or threats. He testified that when the ERU was done securing the residence, they informed Krause that they observed a weapon underneath the stairs. He testified that the ERU does not seize property and would have left the weapon where they found it. Krause testified that in searching the house he went downstairs and when he got to the base of the stairs he saw a gun case that was open with part of the rifle inside sticking out. He testified that the gun and case were sitting on top

of something, but he could not remember what, and there was nothing covering it up.  He further testified that the gun and case were located outside the "cubbyhole."

Omaha Police Officer Gregory Hadcock testified that he interviewed Scales the day after the April 19 incident and that Scales told him that Parnell had brought the rifle to her house about two months earlier and had showed it to her.  He testified that Scales said she told Parnell to get the gun out of the house and that she did not know where Parnell had gotten the gun.

Boston was also called as a witness by the defense.  In regards to the call she received from Parnell, she testified that she and Scales were in a female officer's cruiser when she received the call.  She further testified that when she got the call from Parnell, the female officer was outside of the cruiser.  Boston testified that she got the female officer's attention and the officer went and got Sokolik.  She testified that she then told Sokolik that Parnell said he had a gun and would shoot whoever came through the door.

Lawrence Richardson III, Parnell's brother, testified on Parnell's behalf.  He testified that in April 2004, Parnell was living in Glenwood, Iowa.  He testified that the rifle found at Scales' house belongs to him.  Richardson testified as to how the gun came to be stored at Scales' residence.  He testified that he was having car trouble one day so he drove his car to Scales' residence to see if Parnell could fix it.  He testified that when he arrived at Scales' residence, Parnell was not there and his car was not driveable so he had to leave his car there.  Richardson testified that the rifle was in his trunk because he had been out practice shooting that day.  He testified that he did not want to leave the gun in his car so he asked Scales if she could store the gun for him.  He testified that he and Scales took the gun downstairs, and that Scales said she had a safe place where she would put it, but that he did not know where Scales put it.  He testified that he never told Parnell that the gun was stored at Scales' house.

*Id.* at filing 11-12, at CM/ECF p. 36 & filing 11-13, at CM/ECF pp. 1-8.

*Habitual Criminal*

The Nebraska Court of Appeals also detailed the evidence regarding the habitual criminal allegation that served to enhance Parnell's sentence. The Court of Appeals accurately described that evidence this way:

> In the present case, the State submitted two exhibits each containing a certified copy of a journal entry of a prior judgment convicting and committing Parnell to a term of incarceration of at least 1 year in length, as well as the certified trial docket entries from each judgment and conviction showing that Parnell was represented by counsel who was present with Parnell when he was convicted and sentenced in both of the prior criminal cases. The certification in both exhibits contains the clerk's seal and attestation that the copies are the same as those that appear in the court's records. Parnell made no objection to the two exhibits. In addition, the State submitted a certified "pen packet" maintained by the Department of Correctional Services showing Parnell's dates of commitment for each prior conviction and sentence. The two previous judgments and commitments were both in Douglas County. Where the previous judgment and commitment was in the same court, a certified copy of the judgment and commitment is admissible to prove the previous conviction. *State v. Cole*, 192 Neb. 466, 222 N.W. 2d 560 (1974).

*Id.* at filing 11-13, CM/ECF pp. 27-28.

## Federal Claims

Although Parnell submitted six claims, on initial review, I found that only four of them could proceed because the other two were redundant. (Filing 8.) The four surviving claims are these:

Claim One: There was insufficient evidence to support the petitioner's conviction for possession of a firearm by a felon and being a habitual

criminal.  This is construed as a due process claim arising under the Fourteenth Amendment.

Claim Two:  There was prosecutorial misconduct because a police report containing exculpatory information was not disclosed and because a statement was made to the jury that the petitioner's witnesses were protecting him.  This is also construed as a due process claim.

Claim Three:  The petitioner was denied effective assistance of trial counsel because his attorney failed to review the complete police report, failed to object to or move for a mistrial based on the admission of evidence regarding prior bad acts, failed to interview possible defense witnesses or the officer who discovered the firearm, failed to object to hearsay testimony, failed to advise the petitioner of his constitutional rights, failed to request a continuance after learning that several reports had not been disclosed by the prosecution, and failed to challenge a habitual criminal charge.  This is construed as a Sixth Amendment claim.

Claim Four:  The petitioner was denied effective assistance of appellate counsel because his attorney failed to assert that the plaintiff was denied effective assistance of trial counsel, that the prosecution failed to disclose police reports, or that the evidence was insufficient to convict the plaintiff.  This is also construed as a Sixth Amendment claim.

(Filing 8, at CM/ECF pp. 1-2.)

## Procedural History

*Trial and Sentencing Proceedings*

In June of 2004, the petitioner was charged with "possession of a deadly weapon by a felon"; the date of the alleged crime was April 19, 2004.  (Filing 11-9, at CM/ECF pp. 38-39.)  The charge was later amended to include a claim that Parnell was a habitual offender.  (Filing 11-10, at CM/ECF p. 17.)

The matter proceeded to a jury trial and on October 28, 2004, the jury found the petitioner guilty of being a felon in possession of a firearm. (Filing 11-10, at CM/ECF pp. 16-17.)  On November 29, 2004, a hearing was held to determine whether Parnell should be sentenced as a habitual offender, and the trial judge found that Parnell was a habitual offender and should be sentenced accordingly.  (*Id.* at CM/ECF p. 16.)   In February of 2005, Parnell was sentenced to 10 years in prison (the minimum sentence required by the habitual offender finding).  (*Id.* at CM/ECF p. 8.)  A few days later,  a new lawyer was appointed to represent Parnell, replacing the assistant public defender who had been his trial counsel.  (*Id.* at CM/ECF p. 9.)

*Direct Appeal*

With the aid of his new lawyer, Parnell submitted a timely direct appeal. (Filing 11-9, at CM/ECF pp. 1-3.)  Counsel filed a brief and alleged five assignments of error.  Summarized, they were: (1) the prosecutor's failure to disclose the existence Officer Loftus's report violated Parnell's due process rights and his rights under Nebraska law; (2) Parnell's trial counsel was ineffective because (a) counsel failed to object to the arraignment on the habitual criminal charge; (b) counsel failed to ask for a continuance during the examination of Officer Loftus; (c) counsel failed to object to the "prior bad acts" evidence during the direct examination of Officer Loftus; and (d) counsel erred by bringing out "bad act" evidence during the cross examination of Officer Loftus; (3) the evidence was insufficient to prove that Parnell was guilty beyond a reasonable doubt of possession of the gun; (4) the evidence was insufficient to prove that Parnell was guilty of being a habitual criminal; and (5) the trial court erred in imposing an excessive sentence.   (Filing 11-11, at CM/ECF pp. 38-39.)

The Nebraska Court of Appeals issued its opinion on November 22, 2005. *State v. Parnell*, No. A-05-224 (Neb. App. November 22, 2005) (unpublished) (copy at filing 11-12, at CM/ECF pp. 35-36 & filing 11-13, at CM/ECF pp. 1-29).   The

-10-

Court of Appeals decided the following: (1) Officer Loftus's report was disclosed during trial and Parnell's counsel was given the opportunity to depose Loftus or conduct other discovery to determine whether to recall Loftus and, in any event, the State's failure to disclose the report prior to trial did not prejudice Parnell because the report actually recited inculpatory, and not exculpatory evidence, and the evidence was cumulative; (*id.* at filing 11-13, at CM/ECF pp. 10-14); (2) the evidence was sufficient to find that Parnell, both constructively and actually, possessed the firearm (*id.* at CM/ECF pp. 14-17); (3) Parnell was not denied effective assistance of trial counsel because: (a) the brief testimony about a prior bad act (Parnell being the subject of a "wanted call") was not prejudicial; (b) counsel made a reasonable strategic decision to impeach Loftus using information about a "prior bad act" and, in any event, there was no prejudice; (c) since Parnell's counsel brought the failure to disclose the report to the attention of the trial judge and counsel secured from the trial court an opportunity to engage in discovery, the trial court on its own motion essentially gave Parnell a continuance and counsel's failure to ask for one was not deficient and besides there was no prejudice; (d) no prejudice arose from the allegedly deficient arraignment (the failure to apprise Parnell of his constitutional rights) on the habitual offender allegation[3] because Parnell failed to establish that he would have admitted the habitual offender allegation had he been advised of those rights and there was no reason to believe that the outcome of the subsequent hearing on the sentencing enhancement allegation would have been different had Parnell been

---

[3]Parnell was charged with the weapons offense on June 4, 2004, and he pled not guilty.  (*Id.* at filing 11-12, at CM/ECF p. 35-36.)   The habitual offender allegation was added on October 25, 2004.  (*Id.*)  Parnell was formally advised of the new allegation on October 26, 2004, he pled not guilty and the jury trial on the felon in possession charge began that day. (*Id.*)  As noted earlier, after he was convicted on the weapons offense, a separate hearing was held on November 29, 2004 before the trial judge to determine whether Parnell was a habitual offender.  (Filing 11-10, at CM/ECF p. 16.)

-11-

properly arraigned[4] (*id.* at CM/ECF pp. 17-25); (4) the evidence was sufficient to establish that Parnell was a habitual offender because the State presented two certified copies of court records showing that Parnell had twice been convicted and sentenced to periods of confinement of at least one year and those records also showed that Parnell was represented by a lawyer on each occasion (*id.* at CM/ECF pp. 25-28)[5]; and (5) the sentence was not excessive as it was within the statutory limits and there was no showing that the trial judge abused his discretion in imposing the minimum sentence allowed for habitual offenders. (*Id.* at CM/ECF pp. 28-29.)

On December 21, 2005, Parnell filed a petition for further review with the Nebraska Supreme Court. (Filing 11-9, at CM/ECF p. 3.) The petition was overruled without an opinion and the mandate was issued on February 8, 2006. (*Id.*)

*Post-Conviction Action and Related Appeal*

On June 5, 2006, the petitioner, appearing pro se, filed a motion for post-conviction relief. (Filing 11-14, at CM/ECF pp. 20-35.) He asserted the following claims for relief: (1) the conviction was a result of a "miscarriage of justice" in violation of the federal and state constitutions because the evidence was insufficient

---

[4]The Court of Appeals, recognizing that the habitual criminal allegation resulted in a sentencing enhancement as opposed to a separate offense, assumed, without deciding, that the trial judge should have apprised Parnell of his constitutional rights, a second time, at the time of the arraignment on the habitual offender allegation. The court made this assumption even though the habitual offender allegation did not allege a separate crime and Parnell had been previously informed of his rights when he was first arraigned on the weapons charge. It is also worth noting that prior convictions when used to enhance a sentence need not be proven to a jury. *See*, *e.g.*, *Apprendi v. New Jersey*, 530 U.S. 466, 489-490 (2000).

[5]Those exhibits–showing the requisite convictions and showing that Parnell was represented by counsel–are in the record. (Filing 11-2, at CM/ECF pp. 4-17) (Ex. 15 and Ex. 16).)

(*id.* at CM/ECF pp. 22-23); (2) the petitioner was denied the effective assistance of trial counsel (a) because of counsel's handling of jury instructions; (b) because of counsel's failure to object to the trial judge's comments about bond; and (c) because of counsel's failure to investigate the facts and file a plea in abatement (*id.* at CM/ECF pp. 24-28); (3) the petitioner was denied the effective assistance of appellate counsel for a long list of reasons (15 or more in number) basically boiling down to counsel's failure to make winning arguments on appeal (*id.* at CM/ECF pp. 28-30); and (4) the petitioner was denied a fair trial because of judicial misconduct regarding comments the trial judge made when discussing whether to revoke the petitioner's bond after the jury returned a guilty verdict. (*Id.* at CM/ECF pp. 31-32.)

On June 16, 2006, and without an evidentiary hearing, the trial judge denied Parnell's motion for post-conviction relief in a four page opinion. In pertinent part, Judge Moran, the very experienced trial judge, wrote the following:

> Defendant's allegations of ineffectiveness against his trial counsel are: failure to object to jury instructions, or to offer proposed instructions; that counsel failed to object to statements claimed to be misconduct by the court after trial when the court revoked defendant's bond; and that counsel failed to properly investigate or file a plea in abatement on defendant's behalf. A careful examination of each of defendant's claims of ineffectiveness readily reveal that they are all conclusory in nature and totally unsupported by reference to any specific facts in this case.

> The defendant's allegations of ineffectiveness are, in reality, simply a repackaging of his lack of sufficiency of the evidence claim that was briefed and argued on his direct appeal. The record reflects that trial counsel was fully aware of the contents of State witness's prior statements, pointed out inconsistencies, and even corrected Police Officer Krause on language he used in his own police report. Defendant is unable to cite any specific "failure to investigate" by trial counsel in this case or how any unspecified "failure to investigate" would have affected the outcome of this case. Counsel advanced defendant's theory

of the case – that he was unaware a weapon was present in the home he was barricaded in during a standoff he had with the Omaha Police – repeatedly during the trial. But the trial jury found against defendant on this key issue. Defendant's allegations against his trial counsel are conclusory and, as such, will not support a motion for postconviction relief. *State v. Galvan*, 222 Neb. 104 (1986).

The jury instructions given in this case were standard NJI 2d instructions. Defendant fails to point out in what way the instructions do not accurately state the law or what alternative jury instructions the defendant contends should have been given. This claim is without merit.

After his conviction, defendant's bond was revoked. The comments made by the court at that time are not judicial misconduct as defendant contends. There is nothing in the record indicating any impropriety in revoking defendant's bond. This claim is without merit.

New counsel represented defendant on appeal. Defendant has also made claims against this counsel. The essence of defendant's claims once again center around his contention that the evidence was not sufficient to convict him and that appellate counsel failed to properly brief and present this argument on appeal. The record reveals, however, that this argument was thoroughly explored on his direct appeal but was decided against the defendant. These complaints against defendant's appellate counsel are without merit.

To state a claim of ineffective assistance of counsel as a violation of the Sixth Amendment to the U.S. Constitution and Article I, § 11 of the Nebraska Constitution and thereby obtain reversal of a conviction, a defendant must show (1) that counsel's performance was deficient and (2) that such deficient performance prejudiced the defense; that is, demonstrate a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Defendant has failed to show that either trial or appellate counsel's performance was deficient in any way, and assuming arguendo

-14-

that there was a deficiency in performance, that a reasonable probability exists that the result of the proceeding would have been different.

(*Id.* at CM/ECF pp. 37-38.)

On July 14, 2006, Parnell appealed (filing 11-14, at CM/ECF p. 4) and the matter was briefed.  (Filing 11-14, at CM/ECF pp. 42-59; filing 11-15, at CM/ECF pp. 1-39.)  On February 21, 2007, the Court of Appeals denied the appeal without an opinion.  (Filing 11-14, at CM/ECF p. 2.)  The Court of Appeals cited (*id.*) and followed Rule 7A(1).[6]  The Nebraska Supreme Court denied Parnell's petition for further review without an opinion and the Court issued its mandate on May 31, 2007. (*Id.*)

---

[6]Rule 7A(1) of the Rules of Practice and Procedure in the Supreme Court and Court of Appeals provides in pertinent part as follows:

(1) When the court determines that any one or more of the following circumstances exist and are dispositive of the case submitted to the court for decision:
a. the judgment is based on findings of fact which are not clearly erroneous;
b. the evidence in support of a jury verdict is not insufficient;
c. the judgment or order is supported by substantial evidence in the record as a whole; or
d. no error of law appears;

and the court also determines that a detailed opinion would have no precedential value, the judgment or order will be affirmed in the following manner: "AFFIRMED. See rule 7A(1)."

(These rules are available on Westlaw under the "Nebraska" directory, select "Court Rules and Orders" and "Nebraska Court Rules" (NE-RULES).)

*Federal Action*

Parnell filed his federal habeas corpus action on June 7, 2007. (Filing 1.) Initial review was conducted (filing 8), and this case was progressed. If the respondent elected to file an answer rather than a motion for summary judgment, the parties were ordered to adhere to the following procedures:

8.      If the respondent files an answer, the following procedures shall be followed by the respondent and the petitioner:

      A.      No later than 30 days after the filing of the answer, respondent shall file a separate brief. Both the answer and brief shall address all matters germane to the case including, but not limited to, the merits of the petitioner's allegations that have survived initial review, and whether any claim is bared by a failure to exhaust state remedies, a procedural bar, non-retroactivity, a statute of limitations, or because the petition is an unauthorized second or successive petition. *See*, *e.g.*, Rules 5(b) and 9 of the *Rules Governing Section 2254 Cases in the United States District Courts*.

      B.      The answer shall be supported by all state court records which are relevant to the cognizable claims. *See*, *e.g.*, Rule 5(c)-(d) of the *Rules Governing Section 2254 Cases in the United States District Courts*. Those records shall be contained in separate filing entitled: "Designation of State Court Records In Support of Answer."

      C.      Copies of the answer, the designation, and the respondent's brief shall be served upon the petitioner *except* that respondent is only required to provide the petitioner with a copy of the specific pages of the designated record which are cited in the

-16-

respondent's brief. In the event that the designation of state court records is deemed insufficient by the petitioner, the petitioner may file a motion with the court requesting additional documents. Such motion shall set forth the documents requested and the reasons the documents are relevant to the cognizable claims.

D.    No later than 30 days following the filing of respondent's brief, the petitioner shall file and serve a brief in response. The petitioner shall submit no other documents unless directed to do so by the court.

E.    No later than 30 days after the filing of the petitioner's brief, the respondent shall file and serve a reply brief.

(Filing 8, at CM/ECF pp. 6-7.)

The respondents elected to file an answer (filing 9) and submitted the state court records. (Filing 11.)  Addressing the merits and other issues, the parties submitted their briefs. (Filings 10, 14 and 17.)  This matter became ripe for decision on December 4, 2007.

## II.  ANALYSIS

It is helpful to set forth the general principles that guide me.  After that, I will briefly examine each of Parnell's remaining claims.

### General Principles

The relevant general principles applicable to this case are these:

-17-

\*      As for the standard of review, when a state court has adjudicated a habeas petitioner's claim on the merits, there is a very limited and extremely deferential standard of review both as to the facts and the law. *See* 28 U.S.C. § 2254(d). Sometimes, however, it will be difficult to determine what the state courts did and therefore difficult to determine what standard of review is appropriate. *See*, *e.g.*, *Pfau v. Ault*, 409 F.3d 933, 939 (8th Cir. 2005). In those circumstances, a court may choose "to avoid entanglement" with state procedural questions, and apply a de novo standard of review. *Id.* That is particularly so where a "claim is doomed to failure whether we apply a de novo standard or follow AEDPA's mandate." *Id.*

\*      With regard to the deference owed to factual findings of a state court's decision on the merits, a federal court is bound by those findings unless the state court made a "decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Additionally, a federal court must presume that a factual determination made by the state court is correct, unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

\*      With regard to the deference owed to the conclusions of law set forth in a state court's decision on the merits, a federal court may not grant a writ of habeas corpus unless the state court's legal conclusion "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

\*      In general, a habeas petitioner must first fairly present each claim he or she wishes to litigate in federal court to the state courts. 28 U.S.C. § 2254(b)(1). *See also Anderson v. Harless*, 459 U.S. 4, 6, (1982) (A claim is properly presented when the state courts are given a " 'fair opportunity' to apply controlling legal principles to the facts bearing upon [the claim].") (quoting *Picard v. Connor*, 404 U.S. 270, 275, 277-78 (1971)).

-18-

\*      In Nebraska, a "fair opportunity" ordinarily means that each habeas claim must be presented to the Nebraska Court of Appeals, and then in a petition for further review to the Nebraska Supreme Court if the Nebraska Court of Appeals rules against the petitioner.  *See Akins v. Kenney*, 410 F.3d 451, 454 (8th Cir. 2005) (Nebraska law required habeas petitioner to file a petition for further review with the Nebraska Supreme Court in order to exhaust his available state court remedies after his conviction was affirmed by the Nebraska Court of Appeals; state rules indicated that such a procedure was considered the ordinary process because mandate could not issue until the 30-day period for filing such a petition had lapsed) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 847 (1999) (requiring a petitioner to exhaust one complete round of the State's established appellate review process));  *Akins v. Kenney*, 533 F.Supp. 2d 935, 947 (D. Neb. 2008).

\*      Under Nebraska law, a "motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal." *State v. Lotter*, 664 N.W.2d 892, 911 (Neb. 2003).  *See also Akins*, 410 F.3d at 455-56 n. 1.  In addition, as a general rule, Nebraska courts "will not entertain a successive motion for postconviction relief unless the motion affirmatively shows on its face that the basis relied upon for relief was not available at the time the movant filed the prior motion. The need for finality in the criminal process requires that a defendant bring all claims for relief at the first opportunity."  *State v. Moore*, 718 N.W.2d 537, 542 (Neb. 2006) (death penalty case holding that constitutional challenge to statutorily mandated method of execution was procedurally barred) (internal citation omitted), *cert. denied*, 127 S. Ct. 1134 (2007).

\*      If a petitioner fails to "fairly present" his claim to the state courts, and he can no longer present the claim to the state courts because, for example, a state court rule prohibits serial litigation, then the federal court will be precluded from considering the claim unless the petitioner fits into one of two exceptions. *See*, *e.g.*, *Winfield v. Roper*, 460 F.3d 1026, 1034 (8th Cir.2006), *cert. denied*, 127 S. Ct. 2256

(2007).   That is, the petitioner must demonstrate "cause and prejudice" or a "miscarriage of justice" (like "actual innocence") in order to prosecute a claim when that claim has not been, and cannot be, fully and fairly asserted in the state courts. *Id.*

   *   As for resolution of the merits of a claim in federal court, no evidentiary hearing is necessary when the claim may be resolved as a matter of law based either on undisputed facts or on the applicant's version of the facts, taken as true. *See*, *e.g.*, *Johnston v. Luebbers*, 288 F.3d 1048, 1059 (8th Cir.2002) (district court did not abuse its discretion in denying habeas corpus petitioner's request for an evidentiary hearing on claim that his counsel was ineffective where record already contained facts necessary to resolve the claim).[7]

   *   Even when there is a procedural question presented, a court may alternatively reach the merits where the record is adequate to do so.  *See*, *e.g.*, *Winfield*, 460 F.3d at 1038 (where the record before the court, which included the original transcripts, the record of the state court's evidentiary hearing, the petitioner's habeas petition, and numerous briefs, presented adequate information upon which to base a decision on the merits of the petitioner's ineffective assistance of counsel claim, a court may alternatively consider the merits of the petitioner's claim rather than concentrating only on procedural questions); *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999) ("Although the procedural bar issue should ordinarily be resolved first, judicial economy sometimes dictates reaching the merits if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated.") (en banc).  Indeed, 28 U.S.C. § 2254(b)(2) provides: "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."

---

[7]Parnell's brief presents no facts that are not addressed in the trial record.  On the contrary, he relies upon the trial record as opposed to facts extrinsic to that record. (Filing 14, at CM/ECF p. 5 (discussing petitioner's "Attachments.")

\*     To be eligible for habeas relief based on ineffective assistance of counsel, a petitioner must meet the two part test announced in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). He or she must first establish that counsel's representation was constitutionally deficient, which requires a showing that counsel's performance fell below an objective standard of reasonableness. *Id.* at 687-88; *Wiggins v. Smith*, 539 U.S. 510, 521 (2003). If the claimant establishes the first element, the petitioner must then show that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. This requires proving that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been more favorable to the petitioner. *Id*. at 694-695. A reasonable probability is one "sufficient to undermine confidence in the outcome." *Wiggins*, 539 U.S. at 534. Merely showing a conceivable effect is not enough. *Winfield*, 460 F.3d at 1033.

\*     In Nebraska, when an issue regarding ineffective assistance of counsel has not been presented to the trial court, but the issue is raised on direct appeal (as in cases where new appellate counsel attacks trial counsel), the Nebraska courts will consider and resolve such a claim when the record is sufficient to do so. Indeed, where there is new appellate counsel, issues related to trial counsel's ineffective performance *must* be raised on direct appeal or they will be procedurally barred if later brought in a state postconviction action. *See*, *e.g.*, *State v. Bennett*, 591 N.W.2d 779, 782-783 (Neb. 1999) (where the defendant had new counsel for his direct appeal, defendant's postconviction motion was procedurally barred due to his failure to litigate on direct appeal of robbery and assault conviction claims of ineffective assistance of trial counsel due to attorney's fraudulent readmission to the bar, failure to object to evidence of defendant's prior bad acts and failure to call alibi witness). If the record is not sufficient to decide the claim on direct appeal, the defendant must litigate the claim that his trial counsel was ineffective in a separate state postconviction action so that a proper record can be made. *Id.* ("Although an appellate court will not address an ineffective assistance of counsel claim on direct appeal when the matter necessitates an evidentiary hearing, an appellate court's

-21-

refusal to do so does not bar a later motion for postconviction relief.") (internal citation omitted).

    \*    In Nebraska, if you have been allowed to present an ineffective assistance of counsel claim in a post-conviction action, you cannot file another such action by changing your assertion about how your lawyer erred.  *See*, *e.g.*, *State v. Luna*, 434 N.W.2d 526, 528 (Neb. 1989) (holding that district court's order denying an evidentiary hearing and overruling prisoner's motion for post-conviction relief alleging ineffective assistance of counsel was not erroneous, where defendant had previously made a motion for post-conviction relief alleging ineffective assistance of counsel which was denied, even though allegations in new motion were grounded in different errors allegedly committed by counsel as compared with those cited in prior post-conviction relief attempt).

### Federal Ground One:  Due Process Claim, Lack of Evidence

    Parnell claims that his federal due process rights were violated because the evidence was wholly insufficient to convict him of being a felon in possession of a firearm and for being a habitual offender.   Giving Parnell the benefit of the doubt, I assume that this allegation states a federal claim.   *See*, *e.g.*, *Bounds v. Delo*, 151 F.3d 1116, 1118 (8th Cir. 1998) ("The Due Process Clause prohibits the conviction of an accused 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime of which he is charged.' ") (quoting *In re Winship*, 397 U.S. 358, 364 (1970).)   Although the respondents apparently disagree (filing 10, at CM/ECF p. 16) (arguing that the claim was presented as a state law matter only), I find and conclude that this federal claim was fairly and fully presented to the state courts at the earliest opportunity.  Nonetheless, I will deny the claim.

    First,  I must give deference to the findings and conclusions of the Nebraska Court of Appeals.   In an extended and accurate discussion of the evidence in the

direct appeal, the Nebraska Court of Appeals found that the evidence was sufficient for a reasonable jury to convict Parnell of the weapons charge and, further, that the evidence was sufficient for the experienced trial judge to enhance Parnell's sentence for being a habitual offender. Put simply, Parnell has failed to overcome the deference that I must accord the decision of the Nebraska Court of Appeals.

Second, even if I were to review the claim de novo, I would come to the same conclusion as the Nebraska Court of Appeals. That is, the evidence was sufficient for a rational fact finder to find the defendant guilty, beyond a reasonable doubt, of the weapons charge[8] and to enhance the petitioner's sentence because he was a habitual offender.[9]  *See*, *e.g.*, *Bounds*, 151 F.3d at 1118 (in reviewing the sufficiency of the evidence to support a guilty verdict challenged in a habeas corpus action, the task is to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt).

### Federal Ground Two: Due Process Claim, Prosecutorial Misconduct

There are two components to this federal due process claim. Initially, and primarily, Parnell claims that the prosecutor failed to disclose a report that contained exculpatory information. Almost in passing, Parnell also claims that the prosecutor made improper statements in front of the jury about the petitioner's witnesses protecting him. In his brief, Parnell amplifies this argument by adding that the prosecution used perjured testimony. (Filing 14, at CM/ECF p. 3.)

---

[8]For example, a witness testified that, while the police were in front of the house, Parnell called her on a cell phone and told her that "he had a gun and that he would shoot whoever came through the door." (Filing 11-4, at CM/ECF p. 83 (trial transcript).)

[9]*See* Exhibits 15 and 16. (Filing 11-2, at CM/ECF pp. 4-17.)

The claim that the prosecutor failed to disclose exculpatory information was fairly presented to and extensively dealt with by the Nebraska Court of Appeals in the direct appeal.   The Court found that the report was disclosed, although not before trial, that it was not exculpatory, but rather it was inculpatory, and that, in any event, Parnell suffered no prejudice by the late disclosure.  Both the factual findings and the legal conclusions of the Court of Appeals are sound, and Parnell has not come close to establishing a basis for disregarding the decision of the Court of Appeals. Furthermore, even if I were to review this claim de novo, Parnell would not win.  If I had to make the call, I would come to the same conclusion as the Nebraska Court of Appeals.

As for that part of the claim regarding the prosecutor's statements in front of the jury or the prosecutor's use of perjured testimony, those assertions are entirely lacking in merit.[10]  Regarding the prosecutor's alleged statements, Parnell fails to establish what constitutional error arose because of the statements or how he was prejudiced.  In a similar vein, Parnell's assertion of "perjury" is nothing more than a credibility argument based upon his self-serving reading of the trial transcript.

### Federal Grounds Three and Four:   Sixth Amendment Claim, Ineffective Assistance of Counsel

Parnell claims that both his trial and his separate appellate counsel were ineffective.  These prolix and "scatter shot" claims will be denied.[11]

---

[10]The second portion of this claim about the prosecutor's statements to the jury and use of perjury also appear to be procedurally defaulted because they were not raised on direct appeal and there is probably no good reason why they could not have been presented on direct appeal.

[11]In Parnell's state post-conviction motion he asserted a long laundry list of errors allegedly made by his appellate counsel on direct appeal.  Showing a sophistication seldom seen in pro se habeas litigators, Parnell specifically asserted in

-24-

First, most of the ineffective assistance of counsel claims asserted against trial and appellate counsel were considered and rejected either on direct appeal or were considered and rejected in Judge Moran's written decision denying the post-conviction motion which, in turn, was affirmed by the Nebraska appellate courts. Parnell has, again, failed to give me any good reason why those decisions should not be given deference.

Secondly, even if I review each and every ineffective assistance of counsel claim de novo, each such claim plainly lacks merit. These claims lack merit because the record establishes that counsel was not ineffective or the record fails to provide any reason to believe that counsel's alleged malpractice was prejudicial.

IT IS ORDERED the petition for a writ of habeas corpus (filing 1) is denied and dismissed with prejudice.   A separate judgment will entered.

March 28, 2008.                    BY THE COURT:

                                   s/Richard G. Kopf
                                   United States District Judge

---

his state post-conviction motion that these errors provided a reason to excuse his failure to raise any other claims on direct appeal. (Filing 11-14, at CM/ECF p. 30 ¶ 46.)  Whether this is enough to excuse Parnell's failure to raise specific claims of ineffective assistance of trial counsel in his direct appeal (as well as a portion of the prosecutorial misconduct claim discussed earlier) is one of those very complex and time consuming "procedural default questions" that can properly be avoided by taking the more direct approach set forth in the text.  In short, I decline to waste any more ink on Parnell's attempt to avoid the consequences of his standoff with the police.